HELEN M. FILER, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries alleged to have been sustained through the negligence of defendant's employes, plaintiff testified that she took passage on defendant's road from Rochester to Fort Plain. As the train approached the latter station she passed out, with others, upon the platform; the train was moving slowly; a passenger who preceded her stepped off the car, and the brakeman said to her, "you had better step off, as we are not going to halt any longer," she thereupon stepped down to the lower step, and as she attempted to step down upon the ground, the cars gave a sudden jerk, which threw her down; her clothing caught, she was dragged upon the ground and injured; that the person she called the brakeman had stood upon the platform, had opened the door and called the stations, and called the Fort Plain station, and when he gave the direction to her stood on the platform with his hand on the brakes. She could not recognize the man, and the brakeman on the train denied the plaintiff's statements. *Held*, that the evidence was sufficient to authorize the submission of the questions of negligence and contributory negligence to the jury, and to sustain a verdict for plaintiff.

(Argued December 6, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of plaintiff, entered upon a verdict and affirming an order denying a motion for a new trial.

This action was brought to recover damages for injuries alleged to have been received through the negligence of defendant's employes by plaintiff while alighting from a train on defendant's road. The case has been to this court twice before. (See 49 N. Y., 42; 59 id., 352.)

Plaintiff's testimony on the trial as to the circumstances under which she received the injury complained of was as follows:

"On the evening of the fourth of November I purchased a ticket here, at the Rochester depot, for Fort Plain. After doing so, the station agent told me that the first train over

the road didn't stop at Fort Plain, but to take the one over the Auburn road and I would reach there between three and four in the morning. I did so, and nothing of importance transpired until we were nearing Fort Plain, and being alone, I then made up my mind I would ask the conductor to assist me in alighting, and as he came through he seemed to be in haste, and I merely had time to ask him how many stations before we reached Fort Plain and he said three, and I of course watched the stations, and as we neared Fort Plain I was ready to alight, and I asked a gentleman in front of me if he would assist me and go out and take my baggage, and as I was about going out of the seat a soldier in a seat in front of me stepped up and asked me if I stopped at Fort Plain. I said I did, and asked him if he too stopped there, and he said he did and would stay until morning, and he went in advance of me, and the gentleman stepped along with my baggage, and I stepped out in front of the gentleman with the baggage. The train was then moving very slow, and I thought by the time I reached the platform, after I left my seat, the train would stop. I went out and it was still moving slow, and the soldier stepped out. The soldier stepped off? Yes, sir. You say the train didn't stop? It didn't stop. You saw the soldier step off? The soldier stepped off, and the brakeman said to me, "you had better step off; we are not going to halt any longer;" the soldier had stepped off, and after he gave me the word to go, I started; I went out on the steps, and the cars gave a sudden jerk as I went to step on the ground, which threw me, and after that I became aware that my clothing was caught and I was being dragged; the cars were then moving faster, which of course frightened me, and I gave a terrific scream, and the gentleman with my baggage cried out aloud, "she is killed, she is killed," and I remember no more distinctly from that time until I found myself sitting in the gentleman's sitting-room. Had you observed whether the stations were called before you arrived at Fort Plain, other stations behind? Yes, sir. By whom were they called? By the conductor and the brakeman. Where was

the brakeman? He stood on the platform of the car, in front of me when I went out; when he called the stations he opened the car door. Was this station of Fort Plain called? It was. By whom? By this brakeman. Opening which door? The front door opposite me. Ahead of you? Yes, ahead of me. When you went out and were directed by a brakeman to step off, who was the person that gave you this direction; who was this person, having regard to the person who had called out the stations before? It was the same man. At the time you saw him there acting in the employ of the company? A. Yes, sir. What did he do by way of acting as brakeman, or any thing else? He called the stations, and he stood with his hands on the brakes when he gave me directions to go down the steps.

On the cross-examination the witness testified: "I went down as soon as the brakeman told me I had better. Where was the brakeman? He stood on the opposite platform. What was he doing? He had his hands on the brakes. How was he dressed? I wouldn't like to be positive about his dress, still I think I know. How do you think he was dressed? I think he had on a blue overcoat. Was it a military overcoat? I think it was. A soldier's overcoat? It seems to me it was now. What did he have on his head? He had a cap. What kind of a cap? I don't think that I can describe the cap. Was it a blue cap? I cannot tell. Was it a flat cap or a round-top cap? I cannot tell. What did he say to you? He said I had better get off, they were not going to halt any longer; the same in substance, and I think the words. Then you went to step off? When he told me I had better get off, I went. How many steps did you step down before you found any difficulty? I don't remember; I think I was on the last step. What then occurred? The cars gave a sudden jerk, which threw me. What sort of a jerk was it? It was a sudden jerk, enough to pull a person from their feet."

The brakemen who were on the train as witnesses for defendant denied any such occurrence as testified to by plaintiff, and denied that either wore such a coat as plaintiff

described.   Defendant's counsel moved for a nonsuit, which was denied, and exception duly taken.

Further facts appear in the opinion.

*M. W. Cooke* for the appellant.   Plaintiff having failed to show that she was free from negligence, could not recover. (*Reynolds* v. *N. Y. C. and H. R. R. R. Co.*, 57 N. Y., 285; *Phillips* v. *R. and S. R. R. Co.*, 49 id., 177; *Nichols* v. *Sixth Ave. R. R. Co.*, 48 id., 131, 135; *Morrison* v. *Erie R. Co.*, 66 id., 302.)

*J. H. Martindale* for the respondent.   The motion for a nonsuit was properly denied.   (*People* v. *Lake*, 2 Kern., 362, 363; *Down's Case*, 47 N. Y., 85.)   Plaintiff was entitled to recover and the verdict was not excessive.   (59 N. Y., 352; 2 Kern., 362, 363.)

RAPALLO, J.   It is claimed on the part of the appellant that the facts upon which this court based its previous decisions sustaining the denial of the motion for a nonsuit in this case (49 N. Y., 47, and 59 N. Y., 352) were changed in some material particulars on the last trial.   The statement of the plaintiff on the former trials, that the person by whose direction she alighted from the car was one of the defendant's brakemen, is said to have been disproved on the last trial, and it is argued that that fact is eliminated from the case.

On the last trial the plaintiff testified, as before, that this person was a brakeman, though she could not identify him; and further, that he was the same person who, with the conductor, had called the stations before arriving at Fort Plain; that he opened the door and called Fort Plain station, and that when she went out on the platform of the car he stood on the platform opposite to her, with his hand on the brake; that she did not attempt to alight until he directed her to do so, and he then had his hand on the brake.   The denial by both of the brakemen, shown to have been on the train, of the occurrence, as related by the plaintiff, merely created a conflict of testimony which raised a question for the jury.

Stress is laid upon the statement of the plaintiff, as to the dress of the alleged brakeman, but it must be observed that she testified that she would not like to be positive as to his dress, but thought she knew — thought he had on a blue overcoat, etc. All this was matter for the jury, and was submitted to them in the charge of the court, with the instruction that if the person who gave the direction to the plaintiff was not a brakeman, his advice was entitled to no consideration, and the plaintiff had no right to act upon it. The jury were further instructed to inquire whether at the time there was sufficient motion in the train to render it careless to alight, even in pursuance of the advice of an employe of the defendant, and they were properly charged in that respect.

It is further contended that the evidence on the last trial established that when the plaintiff alighted the train had not reached its stopping place or passed the limits of the station, and, therefore, the defendant was not negligent in not having stopped at that time.

It is conceded by the appellant that the evidence does not show where the eastern terminus of the station was, or where passengers were accustomed to alight; but it is sought to be inferred from the length of the train and the location of the car from which the plaintiff alighted (it being the second from the baggage-car), and from the place where she alighted, that at the time of her so doing the stopping place had not been reached. This was matter of fact, to be inquired into by the jury. From the marks in the snow, testified to by the defendant's witness, it would appear that she alighted opposite to and near the easterly end of the station-house or depot. The train was going east; another passenger (a lame man) had alighted safely immediately before her, and she testifies that she was then told by the brakeman to get off, as the train was not going to halt any longer. At the same time the baggage was being discharged from the train, for the man who was engaged in taking it out and following up the train for that purpose, as it slowly moved to the eastward, testifies that when he turned, after taking out the last piece, he saw her being

dragged on the ground towards him.  It does not appear that the train made any other stop until after the accident, and after the whole train had passed under the bridge, which was seventy feet or more east of the station, and the rear of the train was, as testified to by one of the witnesses, 100 to 150 feet east of this bridge.  The evidence would, in our judgment, have justified the jury in finding that the momentary slowing up or halt of the train, during which these passengers alighted and the baggage was discharged, was intended as the only stoppage for those purposes, and the jury may have so found. Furthermore, on the last trial, the plaintiff testified that, as she was in the act of stepping down from the car, the train gave a jerk which threw her off, when her dress caught.  This conforms to the allegation in the complaint.  It is argued that on the former trial she did not mention this jerk, but that circumstance affected only the credibility of the witness, and was for the consideration of the jury.  The claim that there is no evidence that the jerk was negligent, cannot be sustained.  If the jury believed the testimony of the plaintiff it occurred while she was in the act of alighting from the car by direction of an employe of the defendant, and while baggage was being discharged, and we cannot hold, as matter of law, that the jury could not find it negligent suddenly to start or jerk a train while passengers were so alighting.

We are unable to find any change in the facts of the case, which would justify us in holding that the plaintiff was negligent, or that there was no evidence of negligence on the part of the defendant.  The question as to the plaintiff's negligence, is substantially the same as when the case was here on the first and second appeals, and was properly submitted to the jury.  The evidence on the last trial does not, if the testimony of the plaintiff is credited, render the case more favorable to the defendant, on the question of its negligence, than it was on the former trials.

The length of time which elapsed after the accident, before the development of the injury, presents the most extraordinary feature of this case, and it was the duty of the jury

carefully to scrutinize the evidence in that respect. We cannot say, however, that there was no evidence to establish the necessary connection between the abscess, with which the plaintiff was afterwards afflicted, and the injuries received on the occasion in question. Four juries, including the case of W. M. Filer (49 N. Y., 42), have found in favor of the plaintiff on that question. It was fairly submitted to the jury on the last trial; no exception to the competency of the evidence, on that point, has been argued on this appeal, nor was there any objection or exception to the submission of the question to the jury. On the contrary, the court was requested by the defendant's counsel, to instruct the jury, that it must be affirmatively proved, that the great injury which the plaintiff claimed to have resulted, was the necessary consequence of the act of the defendant, and the court so charged. No exception was taken by the defendant to any part of the charge, and we find no legal ground upon which we would be authorized to disturb the verdict.

The judgment must be affirmed.

All concur except CHURCH, Ch. J., and ALLEN, J., taking no part.

Judgment affirmed.